IDA E. SALISBURY, PLAINTIFF, *v.* THE UNION AND ADVERTISER COMPANY, DEFENDANT.

*Libel — publication of judicial proceedings — when privileged under section* 1907 *of the Code of Civil Procedure.*

To entitle a publication, alleged to be libelous, to the privilege accorded by section 1907 of the Code of Civil Procedure, as being a fair and true report of a judicial proceeding, the publication must be fair and not garbled so as to produce misrepresentations, nor by suppression of some portion of the evidence, or proceedings to have the effect of giving a false or unjust impression, to the prejudice of some of the parties concerned.

It need not, however, be reported *verbatim,* or embrace the entire proceedings, but may consist of an abridged or condensed statement thereof.

The publication of an indictment, and the proceedings upon it in a Court of Sessions, by the defendant in this action, in his newspaper, held to be privileged as a substantially, fair account thereof.

Motion by the plaintiff for a new trial on exceptions taken at the Monroe Circuit and ordered heard at General Term in the first instance. The action was brought to recover damages for an alleged libel. The charge is founded upon the publication by the defendant in its newspapers of what purports to be an indictment and proceedings upon it in the Court of Sessions of Monroe county, with the heading and what precedes the indictment. The publication commences and proceeds as follows : " Was it a disgrace for Rev. James A. Fellows to clandestinely meet Ida Salisbury in the Methodist Church at East Henrietta ? The tongues of scandal lovers were set going sometime ago by the report that Rev. James A. Fellows had been seen in the First Methodist Church at East Henrietta for the purpose of meeting there clandestinely a young woman named Ida Salisbury. The persons who saw him there were Irwin Smith and Herbert C. Dikeman. At the last grand jury these young men were indicted, and the following is a copy of the indictment presented to the court against them." Then follows the indictment, and after it is added : " This morning Nathaniel Foote appeared before the Court of Sessions and demurred to the indictment on the ground that it does not state sufficient specific facts to constitute a crime ; that no averment is made that the accused did anything that would bring dis-

grace upon the Rev. James A. Fellows. He claimed that if the indictment meant anything it meant blackmail, but as it stands it does not charge any sinister or unlawful motive against Mr. Fellows. Mr. Foote cited many authorities to support his points."

. The indictment was found as set forth and proceedings were had in the court. The article was written by the reporter of the defendant and for its newspapers. He was present in the court at the. proceedings on the demurrer and its argument by counsel, and he testified that " the article, as reported, contained a fair statement of what occurred; that it contained the substance of what took place ; " that on the argument the defendant's counsel " asked the question of the court whether it was a disgrace for the statement to be made as charged in the indictment." The district attorney testified that the defendant's counsel in his argument stated in substance that the question seemed to be, " Was it a disgrace for Mr. Fellows to have gone to the church and met Miss Salisbury just as it was stated in the indictment." And that the judge presiding stated that " the crucial question of the case was whether it was a disgrace for Mr. Fellows to have done what the boys threatened to charge him with having done." The evidence as to what occurred on the argument was not questioned. The trial court directed a nonsuit.

*Daniel L. Salisbury*, for the plaintiff.

*Nathaniel Foote*, for the defendant.

BRADLEY, J.:

The publication of a fair and true report of any judicial proceeding without malice is privileged. (Code of Civil Pro., § 1907.) This was substantially the rule at common law, and was founded on the principle that the advantage to the community from publicity of proceedings in courts of justice was deemed so great that the occasional inconvenience resulting from it to individuals should yield to the public good. The publication of such proceedings is treated as made without reference to the individuals concerned, and solely for the information and benefit of society, until the contrary appears. And, therefore, the presumption of malice does not arise and such publication is privileged. (*The King* v. *Wright*, 8 Durn. & E., 293, 298; *Wason* v. *Walter*, 4 L. R., Q. B. Cases, 73, 87.) The

ground upon which the liability for libel rests, is malice on the part of the author or publisher.   And when the published matter tends to disgrace or degrade the party concerned, and is false, the presumption of malice arises in support of an action for damages, unless it come within the classes of privileged communications or publications, when malice must be proved to permit a recovery.   (*King* v. *Root*, 4 Wend., 113; *O'Donaghue* v. *McGovern*, 23 id. 26; *Decker* v. *Gaylord*, 35 Hun, 584.)

In the case at bar there was no evidence of malice on the part of the defendant other than that furnished by the publication itself, and it was dependent upon the fact that the article was not a fair and true report of the judicial proceedings referred to Whether it appeared so clearly by the evidence that it was a fair and true report of the proceedings as to justify the conclusion to that effect as matter of law, or the evidence such that it should have been submitted to the jury for their determination in that respect, is the main question for consideration here.   The latter course is required if construction can be plac ed on any portion of the article which does not bring it within the proceedings had, provided such portion contain defamatory matter or charge against the party seeking relief.

The contention on the part of the plaintiff is that the heading of this publication does not necessarily import that it is part of the judicial proceedings, nor does it necessarily appear that it was such in fact.   The article is set out in the complaint entire, and it is, in view of the evidence, to be construed as a whole to ascertain its necessary import and that of its several parts.   The heading states a question which, standing alone, might be construed as libelous. But connected with what follows it appears to be a question presented by a judicial proceeding.   Such a proceeding appears to have been had, founded upon an indictment, which is embraced within the article as published; and when reference is had to the evidence it further appears that the question represented by this heading was substantially the proposition submitted by counsel to the court, and by the court declared to be the question raised by the demurrer to the indictment.   The indictment alleges that the defendants in it threatened to accuse Mr. Fellows of having gone into the Methodist church, at East Henrietta, " for the purpose of

clandestinely meeting Ida Salisbury," which accusation "they threatened to make public against Mr. Fellows, and the disgrace of such intended meeting as aforesaid, and to expose and impute to him such disgrace," etc. While the indictment alleged a purpose only on the part of Mr. Fellows, the question whether its consummation would have been a disgrace was perhaps legitimately the subject for discussion upon the question whether the indictment charged a criminal offense. That, however, is not important. It is sufficient to constitute the privilege of its publication that such proposition was embraced in and part of the judicial proceedings, and that as published it was a *fair* report in that respect. Some cases are cited which the plaintiff's counsel claims qualify that proposition. (*Flint* v. *Pike*, 4 Barn. & Cress., 473 ; S. C., 6 D. & R., 528 ; *Delegal* v *Highley*, 3 Bing. N. C., 950 ; S. C., 5 Scott, 154.) This would place upon the publisher of judicial proceedings the responsibility of discriminating between those of them which are and those of them which are not legitimately pertinent to the matters involved in the proceeding. If the courts ever attempted to establish any such doctrines, we think it was not accomplished, and that the common law rule does not now impose any such burden and hazard on the publisher of judicial proceedings. (*Wason* v. *Walter*, L. R., 4 Q. B. Cases, 73, 92.) And the doctrine of the early cases in England, which denied the privilege to the publication of *ex parte* judicial proceedings, have been overruled and it is extended to them as well as to those *inter paries*. (*Usill* v. *Hales*, 3 C. P. Div., 319 ; S. C., 30 Moak, 188.)

In *Stanley* v *Webb* (4 Sandf., 21) the early and then current English cases were adopted as the rule of the decision, that the privilege did not embrace *ex parte* judicial proceedings. That question is not here and it is unnecessary to consider the policy of the rule which embraces the publication of *ex parte* judicial proceedings within the privilege or excludes them from it. The statute before referred to makes, in its terms as expressed, no qualification other than that the proceedings be public, which is requisite at common law. The publication must be fair, not garbled so as to produce misrepresentation, nor by suppression of some portion of the evidence or proceedings have the effect to give a false or unjust impression to the prejudice of some parties concerned. But the report need not be *verbatim*, or embrace the entire proceedings.

It may be an abridged or condensed statement, and if it is a substantially fair account it is sufficient. (Odgers on Lib. and Sl., 251; *Andrews* v. *Chapman*, 3 C. & K., 289; *Hoare* v. *Silverlock*, 9 M. & S., 20; *Turner* v. *Sullivan*, 6 L. T. 130; *Blake* v. *Stevens*, 4 F. & F., 232; S. C., 11 L. T., 543.) The difficulty in the defense of cases of this character may arise from what appears in the caption of a report or comments of a reporter, if any such is given to or made in the article published, which may unduly characterize the nature and effect of the proceeding in its relation to the parties to it or to others in a manner not fully justified, or so as to produce an impression derogatory in character, which the proceedings themselves might not furnish. In such case the publication will not, as matter of law, be deemed within the protection of the privilege. It is not the reporter's judgment of the correctness of his comments and their import, but their accuracy and fairness alone which give immunity. The statute does not give any protection to the publisher in that respect, but leaves him subject to the responsibility which the common law imposes by expressly excluding from the operation of its provisions the heading of the publication, or any other matter not part of the proceeding, added to the report of it. (Code of Civil Pro., § 1908.)

In referring to this the counsel has cited several cases which it is contended go in suppot of the plaintiff's right of action. They were well decided upon the situation and facts presented by them, but in the view taken of this case they have no application to it. Taking together the caption, statement and indictment, constituting the entire article, with the evidence of the proceedings, there seems to be no opportunity to give the former any interpretation other than as importing reference to the proceedings and the question appearing to have been presented in it, which the evidence clearly shows was part of it, and that such was the proposition there urged by counsel and announced by the court as the one to be determined, and the statement of the report in other respects seems to have been confined to the matters within those alleged in the indictment and embraced in the proceedings. A new trial will not be granted to a party nonsuited, or against whom a verdict is directed when the court is satisfied that a verdict for such party would be set aside as against the evidence. We think that

such would have been the result fairly required in this case, and for that reason the ruling of the trial court on the defendant's motion for nonsuit was not error.

The motion for a new trial should be denied, and judgment directed for the defendant.

SMITH, P. J., and HAIGHT, J., concurred.

Motion for new trial denied, and judgment ordered for the defendant on the nonsuit.